[No. 6047–7–II.   Division Two.   April 16, 1984.]

KNIGHT, VALE AND GREGORY, *Respondent,* v. JONATHAN
C. MCDANIEL, ET AL, *Appellants.*

*Mary Jo Manzanares,* for appellants.

*Victoria Vreeland,* for respondent.

REED, J.—Two former employees of an accounting firm appeal from a summary judgment awarding damages for a breach of a covenant not to compete. The principal issues concern the validity of the noncompetition agreement and its liquidated damages provision. Finding that both are reasonable and enforceable, we affirm.

Defendants, McDaniel and Hallstrom, are former employees of the Tacoma accounting firm of Knight, Vale & Gregory (KVG). Prior to accepting employment, both McDaniel and Hallstrom negotiated the terms of employment with a representative of KVG. No mention was made of a covenant not to compete upon termination of employment. On the first day of work, however, in McDaniel's case November 1976, and in Hallstrom's July 1977, both were presented with a "Warranty Agreement" containing a covenant not to compete for a period of 3 years after termination of employment. They signed the agreement, nevertheless, because they had changed their positions substantially in reliance upon the offer of employment without such a stricture.

In early 1980, McDaniel and Hallstrom voluntarily left KVG to seek other employment opportunities. In September of 1980, after a brief period performing separate jobs, they formed a partnership to perform accounting services. Soon thereafter, they began providing services to three known former clients of KVG. They persisted in this work despite objections from KVG, which then brought suit to enforce the terms of the warranty agreement. The only relief sought was liquidated damages. Summary judgment was granted in KVG's favor and McDaniel and Hallstrom

were ordered to pay liquidated damages of 35 percent of the gross proceeds derived from KVG's former clients. The court also dismissed defendants' counterclaims for overtime pay and for damages for violation of the unfair business practices act, RCW 19.86.030. They appeal.

We first address the contention that summary judgment was inappropriate because genuine issues of material fact had been framed. Summary judgment is appropriate when the pleadings, admissions, affidavits and all reasonable inferences therefrom show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Olympic Fish Prods., Inc. v. Lloyd,* 93 Wn.2d 596, 611 P.2d 737 (1980).

Absent disputed facts, the construction or legal effect of a contract, including the "reasonableness" of a covenant not to compete, is determined by the court as a matter of law. *Marquez v. UW,* 32 Wn. App. 302, 648 P.2d 94 (1982); *Alexander & Alexander, Inc. v. Wohlman,* 19 Wn. App. 670, 684, 578 P.2d 530 (1978). The primary dispute between the parties concerns enforceability of the warranty agreement and the reasonableness of its covenant not to compete. The facts surrounding entering into the agreement and the acts constituting violation of the covenant are undisputed. Therefore, resolution of the issue by summary judgment was appropriate. *Yeats v. Estate of Yeats,* 90 Wn.2d 201, 204, 580 P.2d 617 (1978).

We next address the correctness of the trial court's legal conclusions that the covenant was reasonable and enforceable and that the provision for liquidated damages did not constitute a penalty. Defendants first challenge the enforceability of the warranty agreement as a whole, claiming it is void for lack of consideration. We disagree.

Although the parties did not discuss the covenant during employment negotiations, McDaniel and Hallstrom knowingly signed the agreement on the first day of work, made no further protest, and were continuously employed and trained for approximately the next 3 years. Continued

employment and training are sufficient consideration for an employee's promise not to compete. *Wood v. May,* 73 Wn.2d 307, 310–11, 438 P.2d 587 (1968); *Racine v. Bender,* 141 Wash. 606, 252 P. 115 (1927).

The more difficult issue is the enforceability of the non-competition covenant itself.

The covenant states in pertinent part:

  (d) For a period of 3 years after leaving your employment, I will not:
    (1) Solicit accounting or auditing work from *any person, firm or corporation with whom I come in contact* as your representative, or
    (2) Perform any accounting or auditing work, either acting for myself *or for any other party, for any person, firm or corporation with whom I came in contact* during my employment with you.
  (e) Each of the above articles shall be construed to cover and *include not only your clients but also members of the staffs of your clients as well as occupants of their offices:*

(Italics ours.) Defendants contend the covenant is contrary to public policy and unenforceable because it is unduly broad in both scope and duration. We do not agree.

It is well established that covenants not to compete upon termination of employment are enforceable if they are reasonable. *Sheppard v. Blackstock Lumber Co.,* 85 Wn.2d 929, 540 P.2d 1373 (1975); *Wood v. May, supra; Racine v. Bender, supra.* Whether a covenant is reasonable involves a consideration of three factors: (1) whether restraint is necessary for the protection of the business or goodwill of the employer, (2) whether it imposes upon the employee any greater restraint than is reasonably necessary to secure the employer's business or goodwill, and (3) whether the degree of injury to the public is such loss of the service and skill of the employee as to warrant nonenforcement of the covenant. *Racine v. Bender, supra; Alexander & Alexander, Inc. v. Wohlman, supra;* Restatement (Second) of Contracts § 188 (1981).

The first factor clearly is met here. KVG has a legitimate

business interest in maintaining the large and profitable clientele acquired over the years. This interest is enhanced in the sphere of public accounting because the nature of the accountant–client relationship is such that employees of such a firm gain extensive, valuable knowledge of the clients' business and internal operations and develop a close, familiar working relationship with the client. This experience enables them to be exceptionally competitive with the firm should they choose to leave and offer the same services on their own. *Racine v. Bender,* 141 Wash. at 612–13.

Nevertheless, public policy requires us to carefully examine covenants not to compete, even when protection of a legitimate business interest is demonstrated, because of equally competing concerns of freedom of employment and free access of the public to professional services. A covenant not to compete should be no greater in scope than is necessary to protect the business or goodwill of the employer. *Wood v. May, supra; Central Credit Collection Control Corp. v. Grayson,* 7 Wn. App. 56, 60, 499 P.2d 57 (1972).

In this case, KVG has sought enforcement of the covenant only as it pertains to performing accounting services during the 3-year period for only those former clients of KVG with whom defendants came into contact as a direct result of their employment. To this extent, we find that the covenant is reasonable and lawful.[1] First, it does not unduly restrain freedom of employment. McDaniel and Hallstrom are not precluded from practicing in Tacoma, are free to compete for clients served by anyone other than KVG and are not precluded from engaging in other branches of accounting work. Also, presumably their advanced training and experience will allow them to attract clients other than by former connections alone. In addition, the clients, as members of the public, are not shown to have

---

[1]Although we have reservations regarding possible overbreadth of the covenant to the extent it prohibits soliciting or performing work for (1) "any person, firm or corporation with whom I come in contact . . .", and (2) "members of the staffs of your clients as well as occupants of their offices. . . ." KVG does not seek to enforce those provisions. Therefore, we do not address them.

been injured unduly by this restraint. There is no evidence that they have been deprived of competent accounting services; they could have chosen either to stay with KVG or employ other firms until the term of the covenant expired. Although defendants may be exceptionally skilled, the service they offer is neither unique nor incomparable.

Finally, KVG did not seek injunctive relief—only damages. Thus, defendants had the option of continuing to service these clients—if they were willing to do so at a loss—in order to hold their business until the covenant expired. Consequently, we hold the trial court did not err by enforcing the covenant to the extent requested by KVG. We emphasize, however, that our decision does not determine the reasonableness of the covenant as a whole, nor of other provisions which KVG did not seek to enforce. See footnote 1. We hold only that on the facts presented to us the covenant is reasonable and enforceable.

■ Turning to the question of liquidated damages, the general rule is that such damage clauses are favored and are enforceable if they do not constitute a penalty or are otherwise unlawful. *Jenson v. Richens,* 74 Wn.2d 41, 442 P.2d 636 (1968); *Management, Inc. v. Schassberger,* 39 Wn.2d 321, 235 P.2d 293 (1951). The test for enforceability of liquidated damages is (1) the amount fixed must be a reasonable forecast of just compensation for the harm that is caused by the breach, and (2) the harm must be such that it is incapable or very difficult of ascertainment. *Management, Inc. v. Schassberger, supra. Brower Co. v. Garrison,* 2 Wn. App. 424, 432, 468 P.2d 469 (1970); Restatement (Second) of Contracts § 356 (1981). Harm resulting to one business from the competition of another business is difficult to estimate accurately. *Mead v. Anton,* 33 Wn.2d 741, 207 P.2d 227, 10 A.L.R.2d 588 (1949). Here, however, there was an expert's uncontroverted affidavit that the damages sought of 35 percent of any fees collected reflect no more than a reasonable forecast of the harm to the employer occasioned by a breach of the covenant. Because the formula is based upon a percentage of competing business

actually occurring it is directly linked to the actual damage to goodwill experienced by the employer. In addition, the 35 percent figure is based upon a general formula in the accounting field for purchase of an ongoing practice. In short, the clause is not an arbitrary estimate of damages, is not a penalty and is enforceable.

McDaniel and Hallstrom's counterclaim under the Fair Labor Standards Act, 29 U.S.C. § 207, properly was dismissed because "professionals" are exempt from its provisions. There is little doubt that accountants are considered professionals, despite the fact that they are required at certain times to perform routine, mundane tasks.

Finally, defendants' claim that the covenant is an unreasonable restraint of trade under RCW 19.86.030 is answered by *Sheppard v. Blackstock Lumber Co., supra.* If the covenant passes the reasonableness test for enforceability, it is not an illegal restraint of trade.

The decision of the trial court is affirmed.

PETRICH, C.J., and PETRIE, J., concur.

Review denied by Supreme Court June 22, 1984.