BDK, INC., a Washington corporation;
Donna Kittilson; Brian Markee,
Plaintiffs—Appellants,

v.

ESCAPE ENTERPRISES, INC., an
Ohio corporation; Escape Enterprises, Ltd., an Ohio limited liability company, Defendants—Appellees.

No. 03–35176.
D.C. No. CV–01–00305–TSZ.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 7, 2004.

Decided June 22, 2004.

Michael T. Schein, Esq., Maltman, Reed,
North Ahrens and Malnati, PS, David E.

**536**

Powell, Seattle, WA, for Plaintiff–Appellant.

Bradford J. Axel, Thomas A. Lerner, Stokes Lawrence, P.S., Seattle, WA, Peter R. Silverman, Shumaker, Loop & Kendrick, LLP, Toledo, OH, for Defendant–Appellee.

Before BRUNETTI, MCKEOWN, and GOULD, Circuit Judges.

## MEMORANDUM *

This lawsuit arises out of a failed business relationship between plaintiffs BDK, Inc., Donna Kittilson, and Brian Markee (collectively "BDK") and defendants Escape Enterprises, Inc. and its successor in interest, Escape Enterprises, Ltd. (collectively "Escape"), involving seven "Steak Escape" restaurant franchises. Following a protracted dispute about royalty payments, BDK sued Escape in King County Superior Court in the State of Washington, alleging violations of Washington's Franchise Investment Protection Act ("FIPA") and the Washington Consumer Protection Act. BDK's complaint also alleged breach of contract and sought declaratory relief and attorney's fees. Escape removed the case to the United States District Court for the Western District of Washington, and asserted counterclaims for federal and common law trademark infringement, statutory and common law unfair competition, and breach of contract. Escape also sought declaratory relief and attorney's fees.

Escape moved to stay the proceedings pending arbitration, based on arbitration clauses in four of the franchise agreements (South Hill, Kitsap, Tacoma, and Alderwood). The district court granted Escape's motion. In addition to the aforementioned franchises, the parties consented to the arbitrator resolving claims regarding the Bellis Fair and Villa Plaza franchises. The parties agree that the arbitrator did not resolve any claims regarding the Southcenter franchise.[1]

The arbitrator found in favor of Escape on BDK's claims and Escape's counterclaims.[2] The district court granted Escape's motion to confirm the arbitrator's award, denied BDK's motion to vacate the arbitrator's award, and dismissed the parties' claims resolved by the arbitrator. The district court thereafter granted summary judgment to Escape as to the remaining claims and counterclaims.[3]

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. The parties also agree that the arbitrator did not resolve the following issues: (1) the validity or existence of any personal guarantees under the franchise agreements; (2) whether BDK was in breach of the non-competition clause in the franchise agreements; (3) whether BDK violated federal or state law by its use of Escape's trademarks or service marks; and (4) Escape's rights under any conditional lease assignment agreements.

2. The arbitrator determined: (1) BDK breached the Tacoma, Kitsap, and Alderwood fran-

chise agreements by withholding all royalties; (2) Escape did not breach any contract obligations; (3) Escape properly terminated the franchise agreements; (4) BDK did not establish that Escape had violated FIPA in any way; and (5) Escape was entitled to damages and attorney's fees.

3. The district court granted summary judgment to Escape on BDK's FIPA and other claims related to the Southcenter franchise, concluding that these claims were precluded by collateral estoppel, and rejected BDK's requests for declaratory relief. The district court also granted summary judgment to Escape on Escape's claims regarding the Southcenter franchise for federal and common law

BDK appeals, alleging error relating to: (1) the confirmation of the arbitrator's findings of fact and conclusions of law; (2) the application of collateral estoppel as to BDK's claims regarding the Southcenter franchise; (3) the application of a statute of limitations to BDK's affirmative defenses; (4) the enforcement of the non-competition clause and conditional lease assignment clause in the Southcenter franchise agreement; (5) the reasonableness of the non-competition clause in the franchise agreements; and (6) the grant of summary judgment to Escape on its claim that BDK violated the non-competition clause in the franchise agreements. We affirm.

Central to this case is the district court's ruling confirming the arbitrator's award. BDK challenges this decision, contending that the arbitrator was partial and made manifest errors of law. We reject these contentions for the reasons stated by the district court.

■ Second, BDK argues that the district court improperly applied collateral estoppel to bar BDK's FIPA claims against Escape concerning the Southcenter franchise. The arbitrator was not empowered to decide claims relating to the Southcenter franchise because the franchise agreement there did not have an arbitration clause. However, the arbitrator had resolved in Escape's favor the FIPA claims that BDK had asserted in its complaint as common to all franchises. The district court granted summary judgment to Escape on BDK's FIPA claims as to Southcenter by applying collateral estoppel based on the arbitrator's findings of fact and conclusions of law, on the view that the critical issues were foreclosed as to Southcenter.

For the arbitrator's decision to have collateral estoppel effect, "(1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action." *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir.1992). Further, "[t]he party asserting preclusion bears the burden of showing with clarity and certainty what was determined by the prior judgment." *Id.* at 1321.

In moving for summary judgment as to BDK's FIPA claims regarding Southcenter, Escape had the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). BDK's complaint had alleged that Escape's violations of FIPA were common to all franchises. Therefore, by presenting to the district court the arbitrator's decision, which resolved precisely the same FIPA claims relating to the other franchise locations, Escape met its burden of establishing the absence of genuine issues of material fact. Once Escape met this burden, BDK was "required to show specific facts, as opposed to general allegations, that present[ed] a genuine issue worthy of trial." 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 2720 (3d ed.1998). *See also Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir.1998) ("to defeat a summary judgment motion, the non-moving party must demonstrate that the evidence is such that a reasonable jury could return a verdict in [its] favor").

trademark infringement, statutory and common law unfair competition, and breach of contract. The district court also granted summary judgment to Escape on its request for declaratory relief and attorney's fees.

BDK contends on this appeal that issues of improper kickbacks from vendors, alleged health code violations relating to required food preparation methods, improper marketing fee charges, and withdrawal of franchisee support differed at Southcenter compared with other franchises. However, BDK did not present any evidence to the district court, in response to Escape's summary judgment motion, that the Southcenter franchise was differently situated with respect to these issues from the franchises that the arbitration addressed. Because BDK did not present such evidence, the district court properly applied collateral estoppel in granting summary judgment to Escape on this issue.

Third, BDK contends that the district court improperly applied a statute of limitations on some of BDK's affirmative defenses to Escape's counterclaims. Under Washington law, a statute of limitations does not apply where the underlying statute is being used as a defense, rather than a basis for a claim. *Allis–Chalmers Corp. v. City of N. Bonneville,* 113 Wash.2d 108, 775 P.2d 953, 955 (1989) ("Statutes of limitations never run against defenses arising out of the transactions sued upon."). Here, however, the district court rejected both of BDK's defenses on the merits. In rejecting BDK's defense relating to Escape's alleged improper refusal to renew the Southcenter franchise agreement, the district court explained, "[BDK] argued also that [Escape] refused to renew the franchise agreement as between the parties.... But [BDK's] argument ... has no merit." Similarly, the district court rejected on the merits BDK's defense as to Escape's alleged violation of FIPA, holding that even if BDK could establish that Escape violated FIPA, BDK's only remedy

would have been an award of damages or rescission of the franchise agreement, not a determination that certain portions of the franchise agreement were unenforceable. Therefore, we reject BDK's argument on this issue.

Fourth, BDK contends that the non-competition and conditional lease clauses of the Southcenter franchise agreement should not be enforced because BDK did not have proper notice of either clause, because the Southcenter franchise agreement had already expired when Escape sought to enforce the clauses, and because Escape improperly refused to renew the Southcenter franchise agreement. We conclude that these clauses were enforceable for the reasons stated by the district court.

■ Fifth, BDK argues that the district court erred in concluding that the non-competition clause in the franchise agreements were reasonable, contending that the non-competition clause is overbroad "if interpreted to include any sandwich or any french fry or fountain beverage." [4] Under Washington law, we evaluate the reasonableness of a non-competition agreement by the following factors: "(1) whether restraint is necessary for the protection of the business or goodwill of the employer, (2) whether it imposes upon the employee any greater restraint than is reasonably necessary to secure the employer's business or goodwill, and (3) whether the degree of injury to the public is such loss of the service and skill of the employee as to warrant nonenforcement of the covenant." *Knight, Vale & Gregory v. McDaniel,* 37 Wash.App. 366, 680 P.2d 448, 452 (1984). Here, Escape sells a particular type of

---

**4.** The district court entered an injunction prohibiting BDK from "directly or indirectly, sell[ing] or participat[ing] in the sale of products similar to Escape's products within a three-mile radius of any Steak Escape restaurant...." The injunction was based on the language of the non-competition clause of the franchise agreements.

food product (grilled sandwiches, salads, and potato products) that warrants protection from direct competitors for a limited amount of time in order to sustain Escape's business. Further, under the terms of the non-competition agreement, BDK is only prohibited from operating a restaurant that sells food products similar to that offered by Steak Escape within a three-mile radius of any Steak Escape restaurant. We determine that the district court did not err in concluding that the non-competition agreement was reasonable.

■ Finally, BDK contends that the district court erred by granting summary judgment to Escape on Escape's claim that BDK violated the non-competition clause in the franchise agreement. BDK argues that Philly's Sandwiches & More ("Philly's"), the name used for the restaurants that it operated in the same locations after its franchise agreements with Escape were terminated, was a general sandwich store that did not serve any of Escape's proprietary food products, and that there were substantial differences in the physical appearance of Steak Escape and Philly's stores. However, the record shows that these restaurants were operated in the same locations in substantially the same configuration with a similar menu, stressing grilled sandwiches, salads, and potato products. Although "signature" items of Escape were discontinued, there is no genuine issue of material fact that the operations remained substantially similar. We determine that there was no error on this issue and reject BDK's contention that its operations were not prohibited by the non-competition clause of the franchise agreements.

AFFIRMED.